611 A.2d 667

UNITED STATES BRONZE POWDERS, INC., PLAINTIFF, v. COMMERCE AND INDUSTRY INSURANCE COMPANY, LUMBERMANS MUTUAL CASUALTY COMPANY, AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, PROVIDENCE WASHINGTON INSURANCE COMPANY, INTEGRITY INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, HARTFORD ACCIDENT AND INDEMNITY COMPANY FEDERAL INSURANCE COMPANY, INSURANCE COMPANY OF NORTH AMERICA, PURITAN INSURANCE COMPANY AND AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, DEFENDANTS.

Superior Court of New Jersey
Law Division Hunterdon County

Decided June 12, 1992.

110

*Richard J. Schachter, Stephen M. Offen* for Plaintiff, United States Bronze Powders, Inc. (*Schachter, Trombadore, Offen, Stanton & Pavics,* attorneys).

*Marian Hertz* for Defendant, Commerce and Industry Insurance Company (*Sheft & Sheft,* attorneys).

*Wendy M. Smith, Joseph P. Vesey, Jr.* for Defendant, Lumbermans Mutual Casualty Company (*Sellar, Richardson, Stuart & Chisholm,* attorneys).

*Michael W. Morrison* for Defendant, Lumbermans Mutual Casualty Company (*Tressler, Soderstrom, Maloney & Priess,* attorneys).

*William Mueller, Yale Hauptman* for Defendant, Providence Washington Insurance Company (*Maloof, Leibowitz & Bubb,* attorneys).

*Michael O'Neill* for Defendant, First State Insurance Company (*Purcell, Ries, Shannon & Mulcahy,* attorneys).

*Louis G. Adolfson, Darrel M. Siefe, John Volpe* for Defendant, First State Insurance Company (*Siff, Rosen & Parker, P.C.,* attorneys).

*David Barry* for Defendant, Hartford Accident Insurance (*Purcell, Ries, Shannon & Mulcahy,* attorneys).

*Joseph M. Suarez* for Defendant, Federal Insurance (*Suarez & Suarez,* attorneys).

*Edward J. Boccher* for Defendant, Insurance Company of North America (INA) (*Mudge, Rose, Guthrie, Alexander & Ferdon,* attorneys).

*Paul R. Koepff* for Defendant, Insurance Company of North America (INA) (*Mudge, Rose, Guthrie, Alexander & Ferdon,* attorneys).

*Walter N. Wilson* for Defendant, Puritan Insurance Company (*Gebhardt & Kiefer,* attorneys).

*Roger Brown, Hahnisk Chung* for Defendant, Puritan Insurance Company (*Adams, Duque & Hazeltine,* attorneys).

BERNHARD, J.S.C.

This is a pre-trial motion brought by defendant, Commerce and Industry Insurance Company for an order granting partial summary judgment under *R.* 4:46–1 *et seq.* in favor of the defendant and against plaintiff, United States Bronze Powders Inc. This court previously granted a similar motion brought by defendant, Providence Washington Insurance Company. For

the purposes of clarifying that decision, both motions will be addressed in this opinion.

On May 29, 1990, plaintiff United States Bronze Powders, Inc. filed this declaratory judgment action seeking insurance coverage from numerous defendants. The complaint specifically alleges that:

> In early 1988, U.S. Bronze noticed an unintentional spill or leakage of copper sulphate and other chemicals which were leaking from its building into the soil. The date of the commencement of the spill has not been determined.
>
> The spill or leakage has caused or threatened to cause damage to the adjacent property owners.
>
> U.S. Bronze has incurred and will continue to incur expenses in attempting to contain the spill or leakage to prevent further damage.

Plaintiff thereafter filed an amended complaint in which it was alleged that a neighboring property of U.S. Bronze had experienced elevated levels of copper and other substances in the soil which was caused by *airborne contamination* from the U.S. Bronze plant. U.S. Bronze seeks a declaratory judgment against various defendant insurance companies for damages incurred in clean up costs and "future remediation, clean up and containment expenses."

The facts show that plaintiff, U.S. Bronze Powders, Inc. is a New Jersey Corporation which manufactures various products in Raritan Township, Hunterdon County, New Jersey. As part of its manufacturing processes in the production of copper powder, U.S. Bronze utilizes materials such as copper, sulfuric acid, and copper sulphate. The amended complaint alleges that contamination of copper sulphate and other chemicals, as well as copper sampling, resulted to neighboring property of U.S. Bronze due to unintentional spilling and/or airborne contamination.

Defendant, Commerce and Industry Insurance Company, issued a total of six general liability policies to U.S. Bronze effective July 1, 1982 to July 1, 1988. Defendant moves for partial summary judgment as it pertains to the last two policies effective July 1, 1986 to July 1, 1987 and July 1, 1987 to July 1,

1988. The July 1, 1986 to July 1, 1987 policy contained the following endorsement:

POLLUTION EXCLUSION

(This insurance does not apply to:)

(F)(1) "Bodily Injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

(a) at or from premises you own, rent or occupy;

(b) at or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste material;

(c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

(d) at or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

(i) to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants, or

(ii) if the pollutants are brought on or to the site or location by or for you.

(2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled reconditioned or reclaimed.

The July 1, 1987 to July 1, 1988 policy contained an almost identical exclusion. The only difference between the two policies is that the latter's title was changed to "Absolute Pollution Exclusion". Defendant, Commerce and Industry Insurance Company moves for partial summary judgment on the basis that these two exclusions bar plaintiff's insurance coverage for the damages alleged in plaintiff's complaint as a matter of law.

This court previously addressed this issue with respect to two insurance policies issued to plaintiff by defendant, Providence Washington Insurance Company. The first policy was effective from August 18, 1986 to August 18, 1987. The second policy was effective from August 18, 1987 to July 1, 1988. Both policies contained an endorsement which read as follows:

## POLLUTION EXCLUSION—ABSOLUTE

It is agreed that Exclusion (g) of the policy is amended to read as follows: It is agreed that this policy shall not apply to any liability for personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gasses, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

Defendant, Providence Washington Insurance Company contended that the exclusion barred coverage for the damages alleged in plaintiff's amended complaint and moved for partial summary judgment with respect to these two policies of insurance. This court granted defendant, Providence Washington Insurance Company's motion on the basis that the exclusionary language read in its totality was clear and unambiguous and that it was obviously the intent of the parties that environmental claims would not be covered under the policies of insurance.

In opposing Commerce and Industry Insurance Company's motion for partial summary judgment, plaintiff relies upon the papers submitted in opposition to defendant, Providence Washington Insurance Company's motion. This court will re-address the issue as to both defendants in order to further enhance and clarify its ruling.

In interpreting an insurance policy, a court must enforce the policy as written when its meaning and language is clear and unambiguous. *Flynn v. Hartford Fire Insurance Company,* 146 *N.J.Super.* 484, 370 *A.*2d 61 (App.Div.1977). If there is no ambiguity, a strained or distorted construction will not be indulged and the clauses in an insurance policy should be given their ordinary and usual meaning. *Wells v. Wilbur B. Driver, Co.* 121 *N.J.Super.* 185, 296 *A.*2d 352 (Law Div.1972). See also, *Michaels v. Brookchester,* 26 *N.J.* 379, 387, 140 *A.*2d 199 (1958); *Jorgenson v. Metropolitan Life Ins. Co.,* 136 *N.J.L.* 148, 55 *A.*2d 2 (Sup.Ct.1947). Unambiguous insurance contracts are enforced in accordance with the reasonable expectations of the insured. *Sparks v. St. Paul Insurance Co.,* 100 *N.J.* 325, 337, 495 *A.*2d 406 (1985). The court should read policy

provisions so as to avoid ambiguities, if the plain language of the contract permits. The court should not torture the language of the policy to create ambiguity. *First State Underwriters v. Travelers Insurance Co.*, 803 *F.*2d 1308, 1311 (3rd Cir.1986) (quoting from *Eastern Associated Coal Corp. v. Aetna Cas. & Sur. Co.*, 632 *F.*2d 1068, 1075 (3rd Cir.1980)). It is clear that when a court finds an insurance policy to be clear and unambiguous, the matter may be properly resolved on summary judgment.

▆▆▆ It is also true that when dealing with clauses of exclusion, strict interpretation is required. *Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur*, 35 *N.J.* 1, at 8, 170 *A.*2d 800 (1961). Moreover, in evaluating the language under study, "courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question." *Mazzilli, supra,* 35 *N.J.* at 7, 170 *A.*2d 800. There is no doubt that the resolution of ambiguous terms in an insurance policy must be resolved against the insurer that drafted the contract. Thus, this court must address the issue of whether the language in each of the policies in question is clear and unambiguous.

With respect to the Providence Washington exclusion clause, plaintiff contends that the clause includes "broad terms which make application difficult if not impossible." In pointing this court to *Weedo v. Stone–E–Brick, Inc.*, 81 *N.J.* 233, 247, 405 *A.*2d 788 (1979), where the New Jersey Supreme Court held that ambiguity exists where "the phrasing of the policy is so confusing that the average policy holder cannot make out the boundaries of coverage", plaintiff claims that there are several terms in the Providence Washington clause which give rise to "differing interpretations" and "overly broad applications."

Specifically, plaintiff attacks the use of the terms "toxic chemicals, waste materials or other pollutants without appropriate definitions." Moreover, plaintiff contends that "no confining or descriptive language is offered for the word 'discharge'

within the clause" and that the clause failed to contain a "timetable for the type of discharge" making it further difficult to understand the limits of the policy. Finally, plaintiff attacks the Providence Washington Insurance clause on the basis that "no clarification as to the boundaries of land excluded under the policy" other than "into or upon the land" is contained in the clause which leaves the ownership issue open to interpretation.

In reviewing the exclusionary language in question, three unreported decisions in New Jersey upholding the validity of similar exclusionary clauses have been brought to this court's attention. In each of the cases, the trial courts held that the exclusion clauses in question were unambiguous and therefore, precluded coverage under the policies. *Rockland Chemical Co. v. Hartford Ins. Group, et al,* Docket No. Esx L–1136–89 (Essex Co. Law Div.1991, an unpublished opinion by Charles E. Villanueva, J.S.C.); *Mearle Corp. Inc. v. Fireman Funds Ins. Co.,* Docket No. Unn L–5946–90 (Union Co. Law Div.1991, an unpublished opinion by Lawrence Weiss, J.S.C.); and also *Peschel v. High Point Sanitation Co.,* Docket No. L–818280–85 (Warren Co. Law Div.1987, an unpublished opinion by John C. Stritehoff, J.S.C.).

This court finds that the exclusion clause contained in the August 18, 1986 to August 18, 1987 and August 18, 1987 to July 1, 1988 policies issued by defendant, Providence Washington Insurance Company is clear and unambiguous and operates as an "Absolute Pollution Exclusion." The exclusion refers to "... smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants" and it is clear that the discharge of *all* pollutants was intended by the parties to be excluded from coverage. Moreover, the exclusion refers to the "... discharge, disbursal, release or escape" of pollutants "... into or upon land, *the atmosphere,* or any water course or body of water." The clear and basic terms of the insurance contract

may not be disregarded, and the plaintiff's attempt to muddy those terms by contentions of ambiguities is without merit.

It is also important to note that the policies of insurance previously provided to the plaintiff by defendant, Providence Washington Insurance Company contained *limiting* language as to the exclusion. Specifically, the prior policies provided that the exclusion "... does not apply if such discharge, disbursal, release, or escape is sudden and accidental." Neither of the two policies in question contained such limiting language. Obviously, the removal of this limiting language is indicative of the parties' intent that the pollution exclusion be *absolute.*

■ With respect to the exclusion clause contained in the two policies of insurance of defendant, Commerce and Industry Insurance Company, plaintiff's sole contention of ambiguity is with respect to the definition for pollutants. Plaintiff claims that the definition "fails to specify, clearly, the types of contaminants or chemicals which would be excluded under this language." The definition of pollutants in question is as follows:

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste material includes materials which are intended to be or have been recycled reconditioned or reclaimed.

It is absolutely clear to this court that this definition is intended to exclude *all* pollutants and contaminants from coverage. A reading of the language in its totality indicates that it was the intent of the parties that environmental claims would not be covered. If plaintiff's view was adopted, an "Absolute Pollution Clause" would require a listing of the myriad of possible "contaminants or chemicals" in order for coverage to be excluded as to the discharge of all pollutants. The phrasing of the policy language is not so confusing that the average policy holder cannot make out the boundaries of coverage as in *Weedo v. Stone-E-Brook, Inc.,* 81 *N.J.* at 247, 405 *A.*2d 788 (1989).

■ Moreover, it is absolutely clear that both of the exclusions contained in the policies of each defendant intended to exclude environmental claims resulting from *airborne contam-*

*ination* as alleged in plaintiff's amended complaint. The Providence Washington policy excludes claims arising out of the discharge, etc. of "smoke, vapors, soot, fumes ... or gasses ... into or upon ... the atmosphere." The Commerce and Industry policy's definition of pollutants includes any "gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes ... and waste material". Neither policy contains limiting language as to the definition of pollutants and obviously excludes coverage of pollutants in *all* of its basic chemical forms (ie. solid, liquid, and gaseous). Certainly, the inclusion of language referring to "gas", "gaseous", "thermal", "smoke", "vapor", "soot", and "fumes" evidences the clear intent of the parties to exclude coverage for *airborne contamination.*[1]

In *Vantage Dev. v. American Env. Tech.,* 251 *N.J.Super.* 516, 598 *A.*2d 948 (Law Div.1991) an absolute pollution exclusion clause was upheld where the plaintiff, Vantage Development, Corp. sought coverage from a defendant. There, third party trespassers had purportedly deposited or "dumped" pollutants on Vantage's property which then migrated to adjacent properties. The court held that the language of the exclusion which referred to "discharge, dispersal, or release or escape" intended to include "dumping" within the exclusion. Judge Lawrence D. Smith noted that:

> While there may be a host of synonyms which could have been added to the exclusion ... a failure to convert an insurance policy into a veritable thesaurus cannot serve to create ambiguity where none exists. *Id.* at 529, 598 *A.*2d 948.

Plaintiff, United States Bronze Powders, Inc. cannot now claim that the defendants should have included every possible pollutant, contaminant, or method of release or dispersal in order to make the policy "clear and unambiguous".

---

[1]The term "airborne" is defined as "1: supported wholly by aerodynamic and aerostatic forces 2: transported by air". WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 66 (1988). All of the items referred to above are released into and/or travel through the air.

Since there is no genuine issue of material fact regarding the liability of the defendants, Providence Washington Insurance Company and Commerce and Industry Insurance Company under the policies in question, each defendants' respective motion for partial summary judgment is granted.