274 N.J. Super. 543 (1994)
644 A.2d 1111
ALAN NUNN, GEORGIA NUNN AND GEORGIA GILMAN, PLAINTIFFS-APPELLANTS,
v.
FRANKLIN MUTUAL INSURANCE CO., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1994.
Decided June 29, 1994.
*544 Before Judges BRODY, STERN and KEEFE.
Geoffrey Orlandi argued the cause for appellants (Daggett & Kraemer, attorneys).
Anthony P. Pasquarelli argued the cause for respondent (Methfessel & Werbel, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiffs Alan Nunn, Georgia Nunn and Georgia Gilman appeal from the entry of summary judgment in favor of defendant Franklin Mutual Insurance Company (Franklin). The issue presented is whether the pollution exclusion endorsement contained in a policy of insurance issued to plaintiffs is unenforceable because it is ambiguous and/or violative of public policy. We conclude that the exclusion is neither ambiguous nor violative of public policy and affirm the judgment in favor of Franklin.
The following facts were conceded for the purpose of the summary judgment motion, and, thus, for this appeal. Plaintiffs are the owners of a building which was apparently used by them as their residence. However, a portion of the building is also utilized as a rural United States Post Office. The building is oil heated. The fuel oil was stored in an above ground oil tank located on plaintiffs' property near the boundary line of property owned by the Loedes.
On February 14, 1991, the oil tank ruptured for an unknown reason, and the majority of its contents escaped onto plaintiffs' *545 property and the Loedes' property. Upon learning of the discharge, plaintiffs notified the Department of Environmental Protection and Energy (DEPE), and defendant Franklin. The firm of Atlantic Environmental Engineering was engaged to perform test excavations and estimate the cost of clean-up. Atlantic estimated the cost to be approximately $50,000.
At the time of the spill, plaintiffs were insured by Franklin under a Special Multi-Peril Policy. Plaintiffs' claim under the policy was denied by Franklin on March 27, 1991. Franklin, through its attorneys, denied the claim essentially on the ground that the policy contained a pollution exclusion endorsement.
The policy appears to have been issued on or about October 25, 1988 for the period of December 1, 1988 to December 1, 1991. It was a renewal policy and was accompanied with the following notice:
ATTENTION IMPORTANT NOTICE
Re: Pollution Liability Exclusion
This policy contains an absolute Pollution Liability Exclusion (Form GL10 04 86).
This means that there is no coverage, under this policy, for any liability which you or any insured may have for damages arising out of pollution.
Clean-up and defense costs arising out of pollution are also not covered under this policy.
We urge you to read Form GL10 04 86 carefully and discuss any question with our agent.
In addition to the above notice, the face sheet of the policy also contained a red sticker label which stated:

IMPORTANT NOTICE

This policy contains a new Pollution Exclusion

PLEASE READ IT CAREFULLY
Although the pollution exclusion endorsement referred to in the "important notice" is referred to as Form GL10 04 86, the endorsement contained in the policy was actually designated as *546 MSO GL 10 04 87. However, the words "POLLUTION LIABILITY EXCLUSION" were prominently printed at the top of the endorsement. The exclusion reads in full as follows:
The policy does not provide any insurance for any sort of costs, expenses, loss, or liability  regardless of how such may arise or be imposed or whether insured elsewhere in this policy  arising directly or indirectly out of the actual, alleged, or threatened discharge, dispersal, escape, or release of pollutants.
Pollutants include any sort of gaseous, liquid, solid, or thermal contaminant or irritant, including, among other such things: acids, alkalis, fumes, smoke, soot, toxic chemicals, vapors, and wastes (including materials which are to be reclaimed, reconditioned, or recycled).
This exclusion does not apply to liability to pay damages for bodily injury or property damages, to the extent otherwise insured in this policy, caused by the fumes, heat, smoke, or soot that are products of combustion arising out of a fire at a premises occupied or owned by, or rented to, you (the named insured) if the materials burned are not otherwise pollutants. However, if the fire is begun as a controlled act, then this exception applies only if: (1) all materials burned  and the burning process  give rise solely to ordinary combustion particulate and products, such as those usual to a domestic building (materials) fire, and (2) the fire does not involve any industrial, manufacturing, or processing activities.
If you have a policy providing specific pollution liability insurance, which applies to bodily injury or property damage insured by this policy, this insurance does not apply unless the limits of liability in such other policy are exhausted.
Any other liability exclusions in this policy pertaining to pollution or pollutants are replaced by this Pollution Liability Exclusion.
Upon the denial of plaintiffs' claim by Franklin, plaintiffs instituted a declaratory judgment action. Sometime thereafter, cross-motions were made for summary judgment. Law Division Judge Ronald B. Graves found that there was no "genuine ambiguity" in the policy. He held that it was "clear and obvious and unambiguous that environmental claims would not be covered by this policy." Notwithstanding the finding of no ambiguity, Judge Graves also found that plaintiffs' claim that they had a reasonable expectation of coverage for pollution coverage for accidental spills was "unreasonable in light of these notices [referring to the label and "important notice" attachment] and the language of the policy, itself." Thus, he entered summary judgment in favor of Franklin while denying plaintiffs' summary judgment motion.
Plaintiffs' ambiguity argument is premised on the fact that, despite the language of Franklin's pollution exclusion endorsement *547 used in form MSO GL 10 04 87, Franklin retained the standard form pollution exclusion clause in the body of the policy. The retained exclusion clause, found in the liability coverage section of the policy, provides as follows:
This insurance does not apply:
(f) to bodily injury or property damage arising out of the discharge, disbursal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or other water course or body of water; but this exclusion does not apply if such discharge, disbursal, release or escape is sudden and accidental[.] (hereinafter referred to as "exclusion (f)")
In Morton Intern., Inc. v. General Acc. Ins. Co. of America, 134 N.J. 1, 629 A.2d 831 (1993), our Supreme Court interpreted the language of exclusion (f) to provide coverage for an insured where 4the polluting event was unintended from the standpoint of the insured. Thus, if plaintiffs' policy contained only the exclusion (f) language, coverage for the occurrence could not be denied. Plaintiffs maintain that the pollution liability exclusion language contained in endorsement MSO GL 10 04 87 does not definitively dispel the insureds' notion that coverage is provided under the exclusion (f) language, and, thus, an ambiguity is created. We disagree.
The pollution exclusion endorsement contains the following pertinent language:
This policy does not provide any insurance for any sort of costs, expenses, loss, or liability  regardless of how such may arise ... or whether insured elsewhere in this policy  arising directly or indirectly out of the actual ... escape[] ... of pollutants. (emphasis added)
Stated succinctly, the quoted phrase unambiguously tells the reader that, even if the circumstances of an occurrence would otherwise fit within the exception found in exclusion (f), the purpose of the endorsement is to exclude that coverage. If that were not clear enough, the last paragraph of the pollution exclusion endorsement provides:
Any other liability exclusions in this policy pertaining to pollution or pollutants are replaced by this Pollution Liability Exclusion.
*548 Plaintiffs concede that Franklin could have avoided the ambiguity and excluded coverage for the occurrence in question if it had provided the following language at the beginning of the pollution exclusion endorsement: "it is agreed that exclusion (f) of the policy is amended to read as follows." That was the form used by the insurance carrier in U.S. Bronze Powders, Inc. v. Commerce and Industry Ins. Co., 259 N.J. Super. 109, 611 A.2d 667 (Law Div. 1992). The Law Division judge in that case found that the use of that format in adopting a pollution exclusion provision was "clear and unambiguous." Id. at 115, 611 A.2d 667. Likewise, plaintiffs concede that, had the policy in question been written in the same manner as the pollution exclusion in Vantage Development Corp., Inc. v. American Environmental Technologies Corp., 251 N.J. Super. 516, 598 A.2d 948 (Law Div. 1991), there would be no ambiguity. In that case the policy contained the following provision preceding the pollution exclusion language:
It is agreed that each and every exclusion and any exception(s) to such exclusion forming a part of this policy and relating to the discharge, disbursal, release or escape of smoke, vapors, soot, fumes, acid, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminant or pollutants are replaced in their entirety by the following exclusion: ...
[Id. at 520, 598 A.2d 948].
By admitting that there are two "better ways" to write a policy so as to alert an insured that the pollution exclusion is absolute, or at least no longer covers pollution events which are "sudden and accidental," plaintiffs concede that there is more than one way for an insurance company to effect the desired result. Indeed, there may have been a better way for Franklin to have put the matter beyond dispute. However, the test for determining if an ambiguity exists is whether "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979). While it might have been better for Franklin to have reprinted the liability section of the policy and deleted exclusion (f) in its entirety, replacing it with the pollution exclusion language contained in the endorsement, the law does not mandate as much. The question is simply whether the phrasing *549 of the policy as issued violates the Weedo standard. Considering the notice that accompanied the policy, the label on the face page, and the words of the endorsement itself, we conclude that no reasonable policyholder could be left with the understanding that pollution coverage existed in any place other than the words of the endorsement.[1]
At oral argument, plaintiffs admitted that they had no difficulty understanding that the escape of oil from the tank into the ground was a polluting event. A reasonable insured, knowing that such an event had occurred and having read the notice provisions alerting insureds to the fact that there was "no coverage" for liability "arising out of pollution," and referring the insured to a form included in the policy, would have no difficulty locating the pollution liability exclusion endorsement if he or she wanted to learn more about the pollution coverage. Thus, we reject plaintiffs' argument that mislabeling or misidentifying the form number between the notice and the endorsement itself created an ambiguity.
While plaintiffs maintain that the policy was ambiguous for the reasons discussed above, they alternatively argue that the failure to provide pollution coverage for this event was contrary to their reasonable expectations. There is some authority for the proposition that "if an insured's `reasonable expectations' contravene the plain meaning of a policy, even its plain meaning can be overcome." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992) (quoting Werner Indus. v. First State Ins. Co., 112 N.J. 30, 35-36, 548 A.2d 188 (1988)). On the other hand, the same Court held in State v. Signo Trading Intern., Inc., 130 N.J. 51, 612 A.2d 932 (1992), that "courts should resort to the doctrine of reasonable expectations only when `the phrasing of the *550 policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" Id. at 62, 612 A.2d 932 (quoting Weedo, supra, 81 N.J. at 246-47, 405 A.2d 788). The two concepts are not easily reconcilable. The Signo Court did not attempt to distinguish Voorhees.
However, we believe the distinction between the holdings in the two cases is explained by the type of policy being scrutinized by the Court in each case. In Voorhees, the Court was interpreting a homeowners policy, whereas the Signo Court was interpreting a commercial policy. The justification for treating the former more liberally than the latter is based upon the relative sophistication of the insureds: a homeowner is a less sophisticated consumer than a commercial insured.
In this case, the policy in question is undoubtedly a commercial policy. Plaintiffs would be unable to obtain a homeowners policy because of the use of a portion of the building for a business enterprise. Carroll v. Boyce, 272 N.J. Super. 384, 640 A.2d 298 (App.Div. 1994). It may be said that the plaintiffs here are unsophisticated, though compelled to purchase commercial coverage, and that the Voorhees rule should be available to them, regardless of our determination that there is no ambiguity in the policy. However, it is important to note that the Voorhees Court relied upon Werner, supra, 112 N.J. 30, 548 A.2d 188, for the proposition that the insured's reasonable expectations can be considered even where the policy is unambiguous. Voorhees, supra, 128 N.J. at 175, 607 A.2d 1255. Werner, though, made it clear that the insured's reasonable expectations should not be considered where the policy is plain in its meaning unless the policy is "`inconsistent with public expectations [and] commercially accepted standards.'" Werner, supra, 112 N.J. at 36, 548 A.2d 188 (quoting Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338, 495 A.2d 406 (1985)).
To say that a policy does not meet public expectations or commercially accepted standards is to say that it is contrary to public policy. However, as the Court pointed out in Signo, supra, "public policy considerations alone are not sufficient to permit a *551 finding of coverage in an insurance contract when its plain language cannot fairly be read otherwise to provide that coverage." Signo, supra, 130 N.J. at 66, 612 A.2d 932. Plaintiffs have failed to cite any authority for the proposition that exclusion of pollution coverage in a multi-peril commercial policy is contrary either to public expectations or commercial standards. Indeed, in light of Franklin's use of the notice that accompanied the policy and the red sticker label affixed to the face sheet, there could be no reasonable expectation by members of the public that pollution coverage would be afforded by the subject policy. Further, the Commissioner of Insurance specifically authorized the use of a pollution exclusion endorsement in commercial liability insurance policies. Department of Insurance, Bulletin # 86-1. The endorsement used by Franklin resulted from that authorization. Plaintiffs have not alleged that Franklin violated any standards set forth by the Commissioner for the use of such an endorsement in the renewal policy procedure. Thus, even if the Voorhees exception applies to commercial policies where the insureds are "unsophisticated," the criteria for applying the reasonable expectations approach to policy interpretation have not been met.
The judgment under review is affirmed.
NOTES
[1] In actuality, the pollution liability exclusion contained in endorsement MSO GL 10 04 87 is not absolute. Paragraph three of the endorsement provides coverage for bodily injury or property damage caused by "the fumes, heat, smoke, or soot that are products of combustion arising out of a fire ... if the material burned are not otherwise pollutants."