**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3551-17T1

HARLEYSVILLE INSURANCE
COMPANY OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MEGA SECURITY CORPORATION
and G.P.N. ENTERPRISES, INC.,

     Defendants,

and

COMPANION TRADING CO.,

     Defendant-Appellant.

_____

Submitted March 20, 2019 – Decided April 8, 2019

Before Judges Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0378-17.

Graff Silverstein, LLP, attorneys for appellant (David Graff, on the brief).

Riker Danzig Scherer Hyland & Perretti, LLP, attorneys for respondent (Lance J. Kalik, of counsel and on the brief; Margriet A. Schaberg, on the brief).

PER CURIAM

Defendant Companion Trading Co. (Companion) appeals from a March 2, 2018 order granting summary judgment in favor of plaintiff Harleysville Insurance Company of New Jersey (Harleysville). The judge concluded Harleysville had no obligation under the insurance policies issued to defendant Mega Security Corp. (Mega) to provide coverage and defend Mega in an action pending in federal court in the Eastern District of New York, entitled Companion Trading, Inc. v. Mega Security Corp. & G.P.N. Enters., Inc., Docket No. 13-cv-5755 (NY action). We affirm.

The relevant facts are essentially undisputed. Companion purchased a safe from Mega for the storage of valuables, including semi-precious stones. In March 2011, Companion was unable to unlock the safe and contacted Mega. Mega sent a technician to Companion's place of business in New York where the safe was kept. The technician was unable to access the safe at Companion's facility. The technician, in conjunction with Mega's management, decided the safe needed to be transported to Mega's warehouse in New Jersey. Mega arranged to transport the safe to its warehouse. Mega took possession of the

2

safe and its contents pursuant to a formal bill of lading printed on Mega letterhead. Companion paid Mega $2500 to transport the safe from its place of business in New York to Mega's warehouse in New Jersey.

With the safe in its custody and care, Mega spent several days attempting to open the safe. Mega hired an independent contractor, Charles DeBellis, to assist it in unlocking the safe. DeBellis, working with Mega employees, opened the safe using a blow torch. The safe never left Mega's warehouse during the five or six days it took to unlock the safe. At all times, DeBellis was supervised by Mega employees.

On March 23, 2011, Mega employees returned the unlocked safe and its contents to Companion. Companion alleged over $4 million worth of opals were damaged during Mega's efforts to open the safe.

In October 2013, Companion filed the NY action against Mega, demanding compensation for the damaged opals. In its complaint in the NY action, Companion alleged breach of bailment, negligence, and breach of contract. Companion alleged Mega "had actual and/or constructive custody, care and control of the [s]afe and opals . . . ." Harleysville[1] assigned

---

[1] Harleysville issued a commercial policy and an umbrella policy to Mega for the period February 15, 2011 to February 15, 2012.

representation to Mega in the NY action subject to an express reservation of the right to withdraw its defense and deny indemnification.

On January 13, 2017, Harleysville filed a declaratory judgment action in the Superior Court of New Jersey (NJ action), seeking to be relieved of defending and indemnifying Mega in the NY action. Harleysville alleged the policies issued to Mega excluded coverage for damage to property in Mega's care, custody, and control, and therefore Harleysville owed no duty to Mega. Companion filed an answer to the complaint in the NJ action. Mega failed to answer the complaint and default was entered.[2]

On February 2, 2018, Harleysville filed a motion for summary judgment in the NJ action. On February 13, 2018, Companion filed a motion to stay the NJ action pending the outcome of the NY action. On March 2, 2018, the motion judge issued a written opinion granting Harleysville's summary judgment motion and denying Companion's motion for a stay.[3] The judge found "no credible evidence which contradict[ed] the fact that the safe containing the opals was in the care, custody and control of Mega" when the opals were damaged.

---

[2] Companion and Harleysville advise that Mega's principal left the country and the corporate entity is defunct.

[3] Companion is not appealing the denial of its motion to stay the NJ action.

The judge determined the policies issued to Mega contained a clear and unambiguous exclusion of coverage for damage to "personal property in the care, custody or control of the insured."

On appeal, Companion claims there were genuine issues of material fact that precluded summary judgment in favor of Harleysville in the NJ action. In addition, Companion asserts the judge erred in applying the "care, custody and control" exclusion in the policies issued to Mega. Further, for the first time on appeal, Companion argues Harleysville is judicially estopped from taking a position in the NJ action that is inconsistent with its position in the NY action.

We review a grant of summary judgment de novo, applying the same standard as the trial court under Rule 4:46. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment should be granted only if the record demonstrates there is "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 539-40 (1995). In determining whether a summary judgment motion was properly granted, we review the evidence, drawing "all legitimate inferences from the facts in favor of the non-moving

party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016) (citing R. 4:46-2(c)).

If no genuine issue of material fact exists, the inquiry turns to "whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). Interpretation of an insurance contract presents a question of law "and can be resolved on summary judgment." Adron, Inc. v. Home Ins. Co., 292 N.J. Super. 463, 473 (App. Div. 1996).

An insurance contract "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). We interpret an insurance policy in accordance with the document's "plain and ordinary meaning." Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012) (quoting Flomerfelt, 202 N.J. at 441). Any ambiguities are resolved in favor of the insured. Ibid.

Language in an insurance policy is not ambiguous simply because different wording could potentially make a provision more understandable. See Villa v. Short, 195 N.J. 15, 26 (2008). "[T]he test for determining if an ambiguity exists is whether 'the phrasing of the policy is so confusing that the

average policyholder cannot make out the boundaries of coverage.'" Nunn v. Franklin Mut. Ins. Co., 274 N.J. Super. 543, 548 (App. Div. 1994) (quoting Weedo v. Stone–E–Brick, Inc., 81 N.J. 233, 247 (1979)). When no ambiguity exists, a reviewing court "should not write for the insured a better policy of insurance than the one purchased." Universal Underwriters Grp. v. Heibel, 386 N.J. Super. 307, 314 (App. Div. 2006) (quoting Gibson v. Callaghan, 158 N.J. 662, 670 (1999)).

In reviewing an exclusionary clause in a policy of insurance, we construe the clause narrowly and "the burden is on the insurer to bring the case within the exclusion." Gibson, 158 N.J. at 671 (quoting Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998)). Policy exclusions are presumed valid and "will be given effect if [they are] specific, plain, clear, prominent, and not contrary to public policy." Homesite Ins. Co. v. Hindman, 413 N.J. Super. 41, 46 (App. Div. 2010).

Where "the property that is damaged is under the direct and continuous supervision of the insured and is a necessary element of the work involved, the property will be deemed in the care, custody or control of the insured." Condenser Serv. & Eng'g Co. v. Am. Mut. Liab. Ins. Co., 58 N.J. Super. 179,

183-84 (App. Div. 1959). As we held in <u>Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc.</u>, 66 N.J. Super. 478, 491 (App. Div. 1961):

> [W]hat constitutes 'care, custody or control' . . . depends not only upon whether the property is realty or personalty, but as well upon many other facts, such as the location, size, shape and other characteristics of the property, what the insured is doing to it and how, and the interest in and relation of the insured and others to it. Whether the property is realty or personalty, and the precise legal relationship of the insured and others to it, may be material in a given situation; but when they are, they are merely facts (more or less important, depending upon the circumstances) to be taken in conjunction with all other facts, in determining whether there is exclusion.

In this case, having reviewed the language in Harleysville's insurance policies, we agree with the trial judge that the language in the policies is unambiguous. Where "the words are unambiguous, they must be enforced even though the contract be inequitable, or even useless to the insured . . . . " <u>Boswell v. Travelers Indem. Co.</u>, 38 N.J Super. 599, 606 (App. Div. 1956).

Here, the safe was transported by Mega to its place of business. Companion ceded the care, custody, and control of the safe and its contents to Mega for the five or six days the safe remained in Mega's warehouse. The opals were damaged while the safe was in Mega's possession, at Mega's warehouse, and during the period that Mega employees and an independent contractor

A-3551-17T1

worked to open the safe. The use of an independent contractor to aid Mega in its quest to access the safe does not change the "care, custody and control" analysis. Mega supervised the work performed by the independent contractor, and Mega employees were present at all times and assisted with the opening of the safe.

Based on the facts presented to the motion judge, we concur the safe was in the "care, custody or control" of Mega. In accordance with the plain and unambiguous language in Harleysville's policies, there is no coverage for Companion's claims against Mega in the NY action.

We next consider Companion's estoppel argument. Because Companion failed to raise this issue before the trial court, we decline to address the argument. See R. 2:10-2; Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) ("Appellate courts ordinarily decline to consider issues not presented to the trial court unless they 'go to the jurisdiction of the trial court or concern matters of great public interest.'").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3551-17T1