293 N.J. Super. 395 (1996)
680 A.2d 1114
S.N. GOLDEN ESTATES, INC., AND STANLEY NEUMAN, PLAINTIFFS-RESPONDENTS,
v.
CONTINENTAL CASUALTY COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 20, 1996.
Decided August 16, 1996.
*397 Before Judges PETRELLA, SKILLMAN and EICHEN.
*398 James M. Adrian argued the cause for appellant (Ford, Marrin, Esposito, Witmeyer & Gleser, attorneys; William P. Ford and Mr. Adrian, on the brief).
Victoria J. Airgood argued the cause for respondents (Law Offices of Petro Morgos, attorneys; Ms. Airgood, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This is an insurance coverage case. Plaintiff S.N. Golden Estates, Inc. (Golden), a developer of new homes, purchased comprehensive liability insurance from defendant Continental Casualty Company (Continental) providing coverage for the period from May 9, 1986, to May 9, 1988, for a residential development known as Potts Mills Acres in Florence Township. The sections of Continental's policy relevant to this dispute are quoted and discussed later in this opinion.
On October 29, 1991, the owners of thirty-two of the thirty-seven homes in Potts Mill Acres, as well as the Township of Florence, filed an action in the Chancery Division against Golden, one of its principals, Stanley Neuman, who also was an insured under the Continental policy, and several of Golden's subcontractors alleging that the sewage systems installed in Potts Mills Acres were defective. More specifically, the complaint alleged that "a substantial number of the septic systems ... failed, causing effluent to seep onto and over the lawns of the properties of the plaintiffs and, in some cases, to back up into the residences." The complaint further alleged that even those plaintiffs whose own septic systems had not failed had been "deprived of the full use and enjoyment of their properties by reason of the malfunctioning of the [other plaintiffs'] septic systems." Plaintiffs sought equitable relief in the form of an order requiring defendants either to install the facilities necessary to connect their homes to the public sewage system or the removal or repair of their septic systems. Plaintiffs also sought compensatory and punitive damages.
*399 Continental denied demands by Golden and Neuman that it provide them with a defense. Golden and Neuman then filed this action seeking a declaration that Continental is obligated to provide them with a defense in the underlying action and to indemnify them for any judgment that might be entered. Golden and Neuman also sought an award for counsel fees already incurred in prosecuting the declaratory action and defending the underlying action.
While the insurance coverage action was pending, the trial court in the underlying action granted a partial summary judgment in favor of plaintiffs which required Golden to prepare "a plan for remedial action." After Golden filed a motion for reconsideration, the trial court conducted further proceedings, including an evidentiary hearing. The court subsequently issued a letter opinion on July 30, 1993, reaffirming the partial summary judgment that granted plaintiffs equitable relief and transferring plaintiffs' damage claims to the Law Division.
The coverage action was brought before the trial court on cross-motions for summary judgment. On March 7, 1994, the trial court issued a letter opinion which concluded that Continental had a duty to defend Golden and Neuman. The court noted in the course of its opinion that "the homeowners alleged untreated effluent seeped across their lawns and into their homes causing injury to their residences, real property and lawns." The court did not make any ruling with respect to Continental's duty to indemnify Golden for any judgment that might be entered in the underlying action.
Thereafter, the court awarded plaintiff $66,376.09 for attorneys fees and costs incurred in prosecuting the declaratory judgment action. The court referred the determination of the amount to award for counsel fees and costs incurred in defending the underlying action to the trial judge in that action, who awarded Golden an additional $267,704.13. The court certified the order awarding these amounts as a final judgment.
*400 Continental appeals, arguing that: (1) the trial court erred in concluding that it had a duty to defend Golden, (2) the trial court abused its discretion in awarding Golden counsel fees and other litigation expenses incurred in the declaratory judgment action, and (3) the trial court erred in awarding Golden the full amount of legal fees and other litigation expenses incurred in defending the underlying action without first affording Continental an adequate opportunity to inquire into the reasonableness of those expenses.
We affirm the parts of the judgment directing Continental to provide for the defense of Golden and Neuman in the underlying action and awarding plaintiffs $66,376.09 for litigation expenses incurred in prosecuting the declaratory judgment action. However, we vacate the part of the judgment awarding plaintiffs $267,704.13 for litigation expenses incurred in defending the underlying action and remand this part of the case to the trial court for reconsideration.

I
"Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255 (1992). "When multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated." Id. at 174, 607 A.2d 1255. "If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." Id. at 173, 607 A.2d 1255.
The policy which Continental issued to Golden for Potts Mill Acres provided coverage for "property damage to which this insurance applies, caused by an occurrence." "[P]roperty damage" was defined as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period." An "occurrence" was defined as "an *401 accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
We are satisfied that the complaint in the underlying action alleged "an occurrence" within the policy period that caused "property damage." Specifically, the complaint alleged that the failures of some plaintiffs' septic systems had caused effluent to seep across their lawns and into their homes, causing damage to their lawns and residences. The complaint further alleged the effluent had seeped onto the property and into the homes of some plaintiffs whose septic systems had not failed, causing them damages including the loss of use of their properties. Plaintiffs sought not only equitable relief but also general compensatory damages. Such allegations and claims for relief fall squarely within the terms of the quoted policy language. See Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 240-41, 405 A.2d 788 (1979) ("Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the CGL").
Continental argues that even if the claims in the underlying action would fall within the terms of this basic coverage, they are excluded by certain relevant property damage exclusions. In considering the applicability of these exclusions to the homeowners' claims against Golden, we must keep in mind that "exclusionary clauses, drawn for the company by men learned in the law of insurance are to be strictly construed against the insurer; that the insured is entitled to protection to the full extent that any reasonable interpretation of them will permit." Ruvolo v. American Casualty Co., 39 N.J. 490, 498, 189 A.2d 204 (1963).
Continental relies upon the "Absolute Pollution" exclusion, which in pertinent part excludes coverage for "property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants ... at or from any site or location used by or for the named insured or others for the *402 handling, storage, disposal, processing or treatment of waste." However, the properties owned by the plaintiffs in the underlying action cannot reasonably be characterized as a "site or location used ... for the handling, storage, disposal, processing or treatment of waste" simply because the houses located on the properties are served by on-site septic systems. Instead, these properties are used as sites for single family residences, and the homeowners' disposal or storage of waste through the septic system is simply incidental to that primary use. Furthermore, Golden's potential liability to those plaintiffs is not predicated upon the processing or treatment of waste but rather upon the construction of homes that include septic systems that are allegedly defective. Therefore, we conclude that the construction of a home that includes a septic system is not the kind of activity to which the "Absolute Pollution" exclusion applies.
In addition, the plaintiffs in the underlying action do not allege the kind of damages that the Absolute Pollution exclusion was designed to exclude from coverage. Several foreign jurisdictions have held that the absolute pollution exclusion was intended to apply only to environmental claims, and not to claims of personal injury or property damage which can be separated from the substance's environmental toxicity. See e.g. Minerva Enter., Inc. v. Bituminous Casualty Corp., 312 Ark. 128, 851 S.W.2d 403, 405 (1993) (holding that an insured real estate developer would not reasonably expect that damages caused by the back-up of a septic system would be included in the descriptions set out in the exclusion); Sullins v. Allstate Ins. Co., 340 Md. 503, 667 A.2d 617, 620-23 (1995) (pollution exclusion was intended to insulate insurance companies from liability for environmental claims, not to insulate them from all claims involving substances which could be classified as pollutants). See also Red Panther Chem. Co. v. Insurance Co. of the State of Pa., 43 F.3d 514, 518-19 (10th Cir.1994) (refusing to universally adopt the environmental/non-environmental distinction but holding that a case-by-case approach must be used to determine the absolute pollution exclusion's applicability in the given set of circumstances).
*403 This line of cases is directly applicable to the present case. There is no indication that the damage claims of the plaintiffs in the underlying action are dependent upon the toxicity of the sewage that has flowed onto their properties and homes, or that they are claiming damages for the remediation of a hazardous condition. Indeed, to the extent that compensatory damages for cleanup of the flooded homes are sought, the complaint does not allege that these costs will differ from the cleanup costs that would be incurred if the homes were simply flooded with ordinary water. Therefore, the present case is different from prior New Jersey cases interpreting the Absolute Pollution exclusion, all of which have involved claims for traditional environmental type damages, i.e., containment and remediation of pollutants which have permeated the land, water or air. See, e.g., A & S Fuel Oil Co. Inc. v. Royal Indem. Co., Inc., 279 N.J. Super. 367, 652 A.2d 1236 (App. Div. 1995) (owner and operator of fuel truck that spilled heating oil into river not covered under commercial automobile insurance for costs of containing and remediating the spill), certif. denied, 141 N.J. 98, 660 A.2d 1196 (1995); Nunn v. Franklin Mut. Ins. Co., 274 N.J. Super. 543, 644 A.2d 1111 (App.Div. 1994) (insurance policy with absolute pollution exclusion did not cover cleanup costs to insured's property after heating oil tank ruptured); Harvard Indus., Inc. v. Aetna Casualty & Surety Co., 273 N.J. Super. 467, 642 A.2d 438 (Law Div. 1993) (absolute pollution exclusion barred claims for government-directed cleanup costs at various sites); United States Bronze Powders, Inc. v. Commerce & Indus. Ins. Co., 259 N.J. Super. 109, 611 A.2d 667 (Law Div. 1992) (absolute pollution exclusion barred coverage for containment and remediation costs incurred as a result of airborne contamination of soil by a spill of copper sulphate and other chemicals); Vantage Dev. Corp., Inc. v. American Env't Technologies Corp., 251 N.J. Super. 516, 598 A.2d 948 (Law Div. 1991) (absolute pollution exclusion barred coverage for cleanup and containment of oil allegedly spilled on insured's property by vandals). In contrast, plaintiffs in the underlying action claim damages that are not dependent on the substance that flowed onto their properties being classified as *404 a pollutant and that do not involve any form of environmental remediation. Therefore, the Absolute Pollution exclusion does not apply.
Continental also relies upon exclusion (n), which excludes coverage for "property damage to the named insured's products arising out of such products or any part of such products." However, since this exclusion only applies to damages to "the named insured's products arising out of such products," it clearly does not absolve Continental of the duty to defend claims by homeowners whose septic systems have not yet failed and therefore have no claim for breach of contract or damages due to faulty workmanship on their own home. Each homeowner received only one product from Golden: that person's own home, including the septic system. Although the fact that a homeowner's septic system was defective would allow that homeowner to institute a breach of contract action against Golden, it would not allow his or her neighbors whose homes also were built by Golden to institute breach of contract actions based on the fact that some of the sewage seeped onto their properties. Those homeowners' only causes of action would be tort claims against Golden for damage to their properties from the run off of sewage. Such suits can no more be excluded from coverage by the products exclusion of Continental's policy than could a suit by the owner of a motor vehicle which was damaged in an accident with a defective motor vehicle manufactured by the same automobile company.
For similar reasons, we are satisfied that exclusion VI(A)(3) for "property damage to work performed by the named insured, arising out of such work or any portion thereof," and exclusion VI(A)(2)(d)(iii), for repair/replacement of property "made ... necessary by reason of faulty workmanship thereon by or on behalf of the insured," which Continental also relies upon, are inapplicable to the claims by homeowners whose septic systems have not failed. Whatever the scope of these exclusions as applied to claims against Golden by parties with defective septic *405 systems, they clearly have no applicability to tort claims by third parties.
Continental also relies upon exclusion (l), referred to by the parties as the alienated premises exclusion. However, this exclusion only applies to "property damage to premises alienated by the named insured arising out of such premises or any part thereof" (emphasis added). The damages alleged by the plaintiffs in the underlying action who have not yet experienced problems with their own septic systems are clearly not covered by this exclusion because their damages do not arise out of the same premises that are alleged to have caused the problem.
In sum, because the complaint in the underlying action alleges that defective septic systems in the houses sold by Golden have caused damages to the homes and properties of homeowners whose own septic systems have not failed, Continental clearly has a duty to defend the underlying action.[1] Since this appeal only presents issues relating to Continental's general duty to defend, and not its duty to provide indemnification for any judgment that may be entered, we have no need to decide which claims, if any, of homeowners whose septic systems failed during the policy period also may fall within the coverage of the policy.

II
Although Continental does not dispute the amount of attorneys fees incurred in the declaratory judgment action, it argues that the trial court abused its discretion in awarding those fees because it denied coverage in good faith and Golden's conduct, specifically its alleged failure to provide information that the occurrence may have taken place within the terms of Continental policies before *406 filing this suit, contributed substantially to the need to litigate the issue of coverage.
In determining whether to award counsel fees, a trial court may consider (1) the insurer's good faith in refusing to pay the demands; (2) the excessiveness of plaintiff's demands; (3) the "bona fides" of one or more of the parties; (4) the insurer's justification in litigating the issue; (5) the insured's conduct in substantially contributing to the necessity of litigation; (6) the general conduct of the parties; and (7) the totality of the circumstances. Enright v. Lubow, 215 N.J. Super. 306, 313, 521 A.2d 1300 (App.Div.), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987). Thus, "the bona fides of one or both of the parties is just one factor which the trial judge must weigh in exercising his discretion to award or deny counsel fees." Kistler v. New Jersey Mfrs. Ins. Co., 172 N.J. Super. 324, 330, 411 A.2d 1175 (App.Div. 1980).
We are satisfied that the trial court did not abuse its discretion in awarding Golden the counsel fees reasonably incurred in litigating this insurance coverage action. Contrary to Continental's argument, the record indicates that Golden shared the information it obtained regarding the allegations in the underlying action with Continental. Golden's demand that Continental undertake the defense of the action was accompanied by a copy of the complaint in the underlying action. Two months later, Golden sent Continental a letter which stated that "evidences of the failures [of the septic systems] manifested themselves both during and after the policy period." Furthermore, after Golden filed suit, but before Continental filed its answer, Golden sent Continental another letter on August 18, 1992, indicating that it was forwarding discovery material "which shows that the septic system problems had manifested themselves within the policy period." Another letter sent that same date enclosed a letter from plaintiffs' counsel in the underlying action identifying three specific residents of Potts Mill Acres who had experienced problems with their septic systems during the policy period. Thus, even though there is no basis for questioning Continental's good faith in refusing to defend *407 the underlying action, we reject Continental's contention that Golden's conduct substantially contributed to the need to litigate this matter. Therefore, it was within the trial court's discretion to award Golden the counsel fees that it incurred in establishing Continental's duty to defend.

III
Continental argues that the award of the costs incurred in the defense of underlying action was improper because the trial judge did not afford it an opportunity to inquire into either the reasonableness of those costs or whether those fees were incurred totally in defense of the underlying plaintiffs' claims, rather than in prosecution of the cross-claims against co-defendants in the underlying suit.
The trial judge in the coverage action referred the determination of the amount to award for attorneys fees and other litigation expenses incurred in the underlying action to the trial judge in that action. Golden submitted its billing records to the judge, apparently without any detailed description of the actual legal services its attorneys had performed.[2] In its answering papers, Continental sought discovery with respect to this application.[3] Continental also argued that it has no duty to reimburse Golden for any expenses it may have incurred in pursuing its cross-claims against the codefendants in the underlying action.
However, the judge summarily rejected Continental's arguments, finding on the basis of his own knowledge of the case that Golden's fee application was reasonable:
Rule 605 of our Evidence Rule says, "The judge presiding at a trial may not testify as a witness in that trial" for obvious reasons.

*408 There is one exception to that general overall rule, ... and the exception is this, judges are constantly called upon to evaluate applications for legal fees. And, what judges have to do in making that evaluation is use their own experience, their own training, their own knowledge. I mean, after all, you have to be a lawyer practicing, I think, for at least ten years before you're even eligible to be a judge.
....
In this particular case I spent several hours reviewing page by page, by page, by page. I also happen to know as having been the judge before whom all these events occurred subject to recognizing that I was not ...  privy to correspondence among counsel, et cetera, but where it's talking about in-court events or submissions to the Court I was the person.
....
I, in my analysis, have gone through the certifications. I have also brought to my understanding or my understanding of the certifications, my knowledge of what occurred before me. Those matters which were said to have been tendered to the Court I was satisfied, and my recollection there were two cases where I didn't remember something, and I went to the file myself and made sure it was done, and, by golly, it was there. So, I was satisfied that those things were done.
I am satisfied further that the amounts of time claimed for what I'll call not Court submitted tasks or events or conduct are reasonable. I will determine that in this, which is really an underlying damages to the declaratory judgment need to defend, that there are $267,704.13 which are reasonable expenses based on reasonable time allocations, and everything that was done was appropriate in the position in which defense counsel in the other case found itself.
The judge also rejected Continental's request to be allowed to conduct discovery regarding Golden's fee application, stating that Continental had two years to conduct such discovery.
Although a trial judge may rely upon his own knowledge of a case in evaluating the reasonableness of a counsel fees application, this does not absolve the judge of the responsibility of making adequate findings of fact and conclusions of law. Khoudary v. Salem County Bd. of Social Servs., 281 N.J. Super. 571, 578, 658 A.2d 1317 (App.Div. 1995); Brewster v. Keystone Ins. Co., 238 N.J. Super. 580, 586-87, 570 A.2d 468 (App.Div. 1990). In this case, the judge simply granted Golden's fee application in its entirety, without making any specific finding as to the reasonableness of the legal services provided by Golden's counsel or the fees charged. The judge's opinion contains no discussion of the extent of discovery, pretrial motions and trial days involved in the defense of the underlying action. In addition, the opinion does not *409 address Continental's argument that counsel fees incurred by Golden in pursuing cross-claims against the codefendants in the underlying action are not subject to reimbursement. "Without the benefit of [such] findings and conclusions, we can only speculate about the reasons for a trial court's decision." Rosenberg v. Bunce, 214 N.J. Super. 300, 304, 518 A.2d 1134 (App.Div. 1986).
Accordingly, we affirm the parts of the judgment directing Continental to provide for the defense of Golden and Neuman in the underlying action and awarding Golden $66,376.09 for counsel fees and costs incurred in the declaratory judgment action. We vacate the part of the judgment awarding Golden $267,704.13 for counsel fees and costs incurred in the underlying action and remand for reconsideration of that award in conformity with this opinion. Jurisdiction is not retained.
NOTES
[1] Since the issue has not been briefed, we express no opinion as to whether this may be an appropriate case for the apportionment of defense costs between covered and non-covered claims. See SL Indus., Inc. v. American Motorists Ins. Co., 128 N.J. 188, 214-16, 607 A.2d 1266 (1992); Grand Cove II Condominium Ass'n, Inc. v. Ginsberg, 291 N.J. Super. 58, 71-74, 676 A.2d 1123 (App.Div. 1996).
[2] The certification of counsel and exhibits submitted in support of Golden's application for reimbursement of litigation expenses in the underlying action were not included in the appendices filed in this appeal.
[3] These answering papers also have been omitted from the appendices filed with this court.