**John TOLEDO, Plaintiff,**

v.

**VAN WATERS & ROGERS, INC., CRST Logistics, Inc., D & S Express, Inc., Frey Industries, Inc., Investors Insurance Company, and Investors Insurance Holding Corporation, Defendants.**

**No. 98–066L.**

United States District Court,
D. Rhode Island.

April 27, 2000.

Thomas A. Tarro, III, Tarro Law Offices, Warwick, RI, for plaintiff.

Deming E. Sherman, Stephen J. MacGillivray, Edwards & Angell, Providence, RI, Thomas C. Angelone, Hodosh, Spinella, Angelone, Providence, RI, Paul V. Curcio, Mark O. Denehy, Adler Pollock & Sheehan, Providence, RI, David H. Stillman, Law Office of Richard P. Barry, Braintiree, MA, Robert Allen Mitson, Jarret & Mitson, Inc., Woonsocket, RI, for defendants.

## OPINION AND ORDER

Lagueux, District Judge.

This litigation largely concerns the question of whether and to what extent liability can be delegated through the operation of contract. In this dispute, as is common in an efficient marketplace, employers contract with outside firms to perform specialized tasks in order to lower costs. When, as in this case, injuries result after the delegation of duties, it must be determined whether liability runs back up the chain of assignment.

Plaintiff, John Toledo, alleges that defendant Van Waters & Rogers, Inc. ("Van Waters"), and its independent contractors and agents, defendants CRST Logistics, Inc. ("CRST"), Frey Industries ("Frey") and D & S Express, Inc. ("D & S"), are liable for personal injuries sustained by him as a result of a chemical leakage caused by the negligence of one or all of Van Waters' delegatees. Plaintiff has also sued the general liability insurer of Frey, who is now under bankruptcy protection, Investors Insurance Company and Investors Insurance Holding Company (collectively, "Investors Insurance") under a Rhode Island law that permits suits against insurers of entities that have filed for bankruptcy protection. Originally plaintiff only sued Van Waters. Shortly thereafter Van Waters filed a third-party complaint against Frey, Investors Insurance, CRST and D & S for indemnification or contribution if made liable to plaintiff. Plaintiff took the hint and subsequently filed a Second Amended Complaint wherein he named the above mentioned parties as direct defendants in this action. So the third party claims of Van Waters are now cross-claims. Van Waters, Investors Insurance, CRST and D & S responded to plaintiff's claims with a raft of defenses and each now moves separately for summary judgment on all claims. For the reasons stated below, the motions of Van Waters and D & S for summary judgment are denied, and the motions of CRST and Investors Insurance for summary judgment are granted.

## I. Background

On June 25, 1996, plaintiff was employed as a truck-driver for C & E Transportation ("C & E") of Pawtucket, Rhode Island.[1] On this date, he was transporting chemical barrels containing nitric and sulfuric acid from Rhode Island to defendant Van Waters at its location in Salem, Massachusetts. When plaintiff arrived at his destination, he opened the rear doors of the trailer and was overcome by toxic fumes. It was later discovered that four of the barrels within the trailer had been improperly sealed, packaged and/or transported, thereby causing a chemical leak in the four barrels containing nitric acid. As a result of inhaling the toxic fumes, plaintiff alleges he sustained permanent personal injury.

By following the travel of these chemical barrels, it is clear that they were handled by a number of entities along the way. The acid in question was bought in bulk by the Woodbridge, New Jersey branch of Van Waters. Pursuant to a longstanding contractual agreement between Van Waters and Frey, the latter would package and seal the acids. The chemicals in question were delivered to Frey's warehouse in Newark, New Jersey in bulk in a tanker-truck from the manufacturer. Frey then packaged the chemicals and sealed them in smaller drums for transportation. Frey has since filed for bankruptcy protection. Investors Insurance is Frey's general liability insurance carrier.

Van Waters contracted with CRST, a licensed freight broker, for the transportation of the chemicals from New Jersey to the Salem, Massachusetts branch of Van Waters. CRST then contracted with D & S for the transportation of the chemicals from New Jersey to Massachusetts. The chemical barrels in question were filled, sealed, and loaded onto D & S trailer number 251 by employees of Frey. The load of chemicals was then transported from Frey's warehouse to Greenbrook, New Jersey, by a driver for D & S.

Since D & S did not have a regular route to Massachusetts, it contracted with C & E to transport the packaged chemicals. An employee of C & E moved the drums of chemicals from the D & S trailer onto C & E trailer number 201, and drove them to a warehouse in Pawtucket, Rhode Island. There is no evidence as to the condition of the chemicals at issue when they arrived in Pawtucket.

It was at this time that plaintiff, a C & E driver, finally came into contact with the chemicals. On June 25, 1996, plaintiff picked up trailer 201 without looking therein and drove the chemical drums at issue to the Van Waters warehouse in Salem, Massachusetts. Upon arrival at the Salem warehouse, plaintiff alleges that he came into contact with the fumes from the leakage of four barrels of nitric acid upon opening the doors to the trailer. Plaintiff alleges that the chemical spill was caused by improper gaskets having been placed onto the barrel caps, improper loading within the trailer and a failure to inspect or re-package the load during transportation.

In his Second Amended Complaint, plaintiff alleges that he has sustained physical injuries as a result of having come in contact with the chemical fumes. Specifically, in Count I plaintiff alleges that the packaging, sealing and transportation of nitric and sulfuric acid is a hazardous activity, such that defendants, their agents and/or employees were under a duty to use reasonable care in carrying out these activities. *See* Second Amended Complaint, § 15. Plaintiff further contends that defendants, their agents and/or servants negligently breached their respective duties in carrying out these activities. *Id.* at § 17. In addition, in Count II plaintiff posits that in the absence of direct evidence of defendants' breach of duty, he will rely on the doctrine of res ipsa loquitur to circumstan-

---

1. At the hearing on September 10, 1999, this Court granted the summary judgment motion of defendant C & E.

tially prove that the chemical leak of nitric acid was the result of defendants' negligence in carrying out the aforementioned activities. *Id.* at §§ 20–24.

As stated earlier, defendant Van Waters has filed cross-claims against Frey, Investors Insurance, CRST and D & S seeking indemnification or contribution if it is made liable to plaintiff. Finally, CRST filed a cross-claim against D & S for refusing to honor an indemnification provision in their contract.

Van Waters, Investors Insurance, CRST and D & S have all separately moved for summary judgment on all claims and cross-claims. At the hearing on September 10, 1999, this writer invited plaintiff and Van Waters to further brief several issues pertinent to the summary judgment motion filed by Van Waters. After consideration of all the briefs and after conducting further research on all the issues, this Court will now address each motion for summary judgment in turn.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" *Morrissey v. Boston Five Cents Savings Bank*, 54 F.3d 27, 31 (1st Cir.1995)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir.1995). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I.1991). Summary judgment is only available when there is no dispute as to any material fact and only questions of law remain. *See Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996). Additionally, the moving party bears the burden of showing that no evidence supports the nonmoving party's position. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

### A. Jurisdiction and Choice of Law Rules in Tort Cases

■ This Court has subject matter jurisdiction over this lawsuit based on diversity of citizenship of the parties. *See* 28 U.S.C. § 1332(a)(1). When the basis of a federal court's jurisdiction is diversity of citizenship, the court must apply the substantive law of the state where it sits, including that state's choice of law rules. *See Erie R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Spurlin v. Merchants Ins. Co.*, 57 F.3d 9, 10(1st Cir.1995). At the hearing, the parties all agreed that Rhode Island law should govern plaintiff's claims.[2] However, in his

---

**2.** However, Investors Insurance's counsel argued that New Jersey law should govern the interpretation of the commercial general liability policy issued to Frey. The choice of law rule for contract cases is discussed in section

Supplemental Brief, plaintiff contends that Massachusetts law should be applied, but he misstates the law by arguing that Rhode Island follows a "lex loci delicti" choice of law rule in tort cases.

█ The Rhode Island Supreme Court has made it clear that in negligence cases where there is a conflict of laws issue, choice of law depends on an "interest-weighing" approach, which balances four factors in order to determine which jurisdiction has the most significant interest in the litigation. *See Blais v. Aetna Cas. & Sur. Co.*, 526 A.2d 854, 856 (R.I.1987); *Woodward v. Stewart*, 104 R.I. 290, 243 A.2d 917, 919–20 (1968); *La Plante v. American Honda Motor Co.*, 27 F.3d 731, 741 (1st Cir.1994)(applying Rhode Island choice of law rules in tort action). These factors include: (1) jurisdiction where injury took place; (2) jurisdiction where the conduct causing the injury occurred; (3) the domicile or residence of the litigants; and (4) jurisdiction where the relationship between the litigants is centered. *See Blais*, 526 A.2d at 856 (citing *Brown v. Church of the Holy Name of Jesus*, 105 R.I. 322, 252 A.2d 176, 179 (1969)).

In this case, Massachusetts has one contact since that is where the injury took place. However, this contact is not considered important in preserving the interest of Massachusetts because it was fortuitous that the injury actually occurred there. *See* Restatement (Second) of Conflict of Laws § 145, comment e at 419 ("place of injury will not play an important role.... when the place of the injury can be said to be fortuitous"). If plaintiff had checked the load before departing, his injuries could very well have been sustained in Rhode Island. There is no good reason to apply Massachusetts law in the present action. Rhode Island has a more significant contact since that is the state of the domicile of plaintiff and Rhode Island does have a significant interest in protecting its citizens from the torts of foreign corporations. Finally, New Jersey also has a contact with this matter since it is the

jurisdiction where most of the relationships between the litigants is centered. New Jersey is where Van Waters entered into contracts to have the chemicals packaged and transported. With respect to the final factor, it is not certain if the negligent conduct giving rise to this action took place only in New Jersey or in all three states.

█ Consequently, in this case no one jurisdiction stands out under the "interest-weighing" analysis. Further, none of the defendants have argued that New Jersey tort law should be applied to this case. Therefore, this Court will apply the law of Rhode Island, the forum state, to the tort issues raised in the motions filed by Van Waters, CRST and D & S because that is likely what a Rhode Island state court would do.

## B. Investors Insurance's Motion for Summary Judgment

Plaintiff's claim against Investors Insurance is brought pursuant to R.I. Gen. Laws § 27–7–2.4 (1998). As stated earlier, Investors Insurance issued a liability policy to Frey, the company that packaged and sealed the chemicals in question. Section 27–7–2.4 provides:

> Any person, having a claim because of damages of any kind caused by the tort of any other person, may file a complaint directly against the liability insurer of the alleged tortfeasor seeking compensation by way of a judgment for money damages whenever the alleged tortfeasor files for bankruptcy, involving a Chapter 7 liquidation, a Chapter 11 reorganization for the benefit of creditors or a Chapter 13 wage earner plan, *provided that the complaining party shall not recover an amount in excess of the insurance coverage available for the tort complained of.*

R.I.Gen.Laws § 27–7–2.4 (emphasis added). Thus, for plaintiff to recover against Investors Insurance, it is necessary that the commercial general liability policy in

III. B., where Investors Insurance's motion is addressed.

effect at the relevant time cover the alleged tort committed by Frey, which is now under bankruptcy protection. In its motion for summary judgment, Investors Insurance argues that because a "total pollution exclusion" clause is in the policy, plaintiff cannot bring a claim pursuant to § 27–7–2.4. In response, plaintiff assumes that the "total pollution exclusion" is not applicable and argues that there is coverage under the "products completed operation hazard" provision of the policy.

█ Since plaintiff's claim against Investors Insurance raises issues concerning the interpretation of the insurance contract, it is necessary for this Court to briefly address Rhode Island's choice of law rules in contract cases. The Rhode Island Supreme Court has not explicitly decided in contract cases whether a "lex loci contractus" or an "interest weighing" analysis will be applied. *See Crellin Technologies v. Equipmentlease Corp.*, 18 F.3d 1, 5 (1st Cir.1994)(collecting state cases); *URI Cogeneration Partners, L.P. v. Board of Governors For Higher Education*, 915 F.Supp. 1267, 1279–80 (D.R.I.1996). Since both Investors Insurance and plaintiff agree that New Jersey law should be applied to the interpretation of the insurance contract it is unnecessary for this Court to further discuss these principles.[3] In any event, it is clear that New Jersey law should apply to any questions of insurance contract interpretation, because that is where both parties to the contract are domiciled and have their principal place of business, and also where the parties entered into the contract. Therefore, under either choice of law rule utilized in Rhode Island, New Jersey would be the jurisdiction whose substantive law should govern.

On June 25, 1996, Investors Insurance provided commercial general liability coverage to Frey under Policy No. GLP1001481, effective August 18, 1995 through August 18, 1996. *See* Investors Insurance's Brief, Ex. 5. This policy con-

tained a "total pollution exclusion" endorsement. That endorsement provides:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART EXCLUSION F. UNDER COVERAGE A (SECTION I) IS REPLACED BY THE FOLLOWING:

F. (1) "BODILY INJURY" OR "PROPERTY DAMAGE" WHICH WOULD NOT HAVE OCCURRED IN WHOLE OR IN PART BUT FOR THE ACTUAL, ALLEGED, OR THREATENED DISCHARGE, DISPERSAL, SEEPAGE, MIGRATION, RELEASE, OR ESCAPE OF POLLUTANTS AT ANY TIME.

(2) ANY LOSS, COST OR EXPENSE ARISING OUT OF ANY:

(a) REQUEST, DEMAND OR ORDER THAT ANY INSURED OR OTHERS TEST FOR, MONITOR, CLEAN UP, REMOVE, CONTAIN, TREAT, DETOXIFY OR NEUTRALIZE, OR IN ANY WAY RESPOND TO, OR ASSESS THE EFFECTS OF POLLUTANTS; OR

(b) CLAIM OR SUIT BY OR ON BEHALF OF A GOVERNMENTAL AUTHORITY FOR DAMAGES BECAUSE OF TESTING FOR, MONITORING, CLEANING UP, REMOVING, CONTAINING, TREATING, DETOXIFYING OR NEUTRALIZING, OR IN ANY WAY RESPONDING TO, OR ASSESSING THE EFFECTS OF POLLUTANTS.

POLLUTANTS MEANS ANY SOLID, LIQUID, GASEOUS, OR THERMAL IRRITANT OR CONTAMINANT INCLUDING SMOKE, VAPOR, SOOT, ACID, ALKALIES, CHEMICALS, AND WASTE.

*Molnar,* 36 F.Supp.2d 63, 66–67 (D.R.I.1999).

---

**3.** For a synopsis of Rhode island's choice of law rules for contract cases, *see Nortek, Inc. v.*

WASTE INCLUDES MATERIAL TO BE RECYCLED, RECONDITIONED, OR RECLAIMED.

*Id.*

Because of the ambiguity presented by the phrase "sudden and accidental" in commercial general liability policies, the insurance industry modified the standard pollution exclusion in 1985 to exclude physical injury or property damage from all polluting discharges. *See generally* 9 Couch on Insurance 3d § 127:14 (1997). Since the insurance industry introduced the "total pollution exclusion" New Jersey courts have consistently held that these endorsements are clear and unambiguous in the context of toxic pollutants that are released into the environment although they have been generally strictly construed in their application. *See United States Bronze Powders v. Commerce and Indus. Ins.,* 259 N.J.Super. 109, 118, 611 A.2d 667 (Law Div.1992), *aff'd,* 293 N.J.Super. 12, 679 A.2d 674 (App.Div.1996); *Harvard Indus., Inc. v. Aetna Cas. & Sur. Co.,* 273 N.J.Super. 467, 481, 642 A.2d 438 (Law Div.1993); *A & S Fuel Co. v. Royal Indem. Co.,* 279 N.J.Super. 367, 371, 652 A.2d 1236 (App.Div.), *cert. denied,* 141 N.J. 98, 660 A.2d 1196 (1995); *Kimber Petroleum Corp. v. Travelers Indem. Corp.,* 298 N.J.Super. 286, 304, 689 A.2d 747 (App. Div.), *cert. denied,* 150 N.J. 26, 695 A.2d 669 (1997). Therefore, the words in the endorsement will be given their plain and ordinary meaning. *See Voorhees v. Preferred Mutual Ins. Co.,* 128 N.J. 165, 175, 607 A.2d 1255 (1992).

To date, there have been very few New Jersey cases that have held that a "total pollution exclusion" contained in a commercial general liability policy does not operate to exclude coverage. In the cases where the exclusions were found inapplicable, the particular facts dictated that result. *See, e.g., S.N. Golden Estates, Inc. v. Continental Cas. Co.,* 293 N.J.Super. 395, 402, 680 A.2d 1114 (App.Div.1996); *Byrd v. Blumenreich,* 317 N.J.Super. 496, 504, 722 A.2d 598 (App.Div.1999).

For example, in *Golden Estates,* the policyholder, a developer of new homes, was seeking insurance coverage for property damage that resulted from sewage leakage onto a number of lawns. The particular "total pollution exclusion" at issue in the case predicated exclusion upon "escape of pollutants ... at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing or treatment of waste." *S.N. Golden,* 293 N.J.Super. at 401–02, 680 A.2d 1114. In interpreting the exclusion as inapplicable, the Court found that the "properties owned by the plaintiffs [cannot be] characterized as a 'site or location used ... for the handling, storage, disposal, processing or treatment of waste[.]'" *Id.* at 402, 680 A.2d 1114.

Similarly, in *Byrd,* the New Jersey Appellate Division found that a "total pollution exclusion" did not exclude coverage for personal injuries which resulted from the ingestion of lead paint chips or flakes. There the Court held that damage sustained from exposure to chips, flakes, or dust emanating from lead paint does not fit the "total pollution exclusion," which uses the words "'discharge, dispersal, release, or escape,'" thereby "imply[ing] an active or clearly perceived physical event." *Byrd,* 317 N.J.Super. at 504, 722 A.2d 598. The Courts in both *Golden Estates* and *Byrd,* found the "total pollution exclusion" inapplicable because of a strict interpretation of the plain meaning of the words used in the endorsement.

■ In the present case, the "total pollution exclusion" clearly covers the underlying facts. The "total pollution exclusion" in Frey's policy does not contain qualifying language restricting its application such as the exclusion in *Golden Estates.* In addition, the physical injury alleged by plaintiff in this case, as compared to *Byrd,* is the direct result of either a "discharge, dispersal, seepage, migration, release, or escape of pollutants." Further, the "total pollution exclusion" in this case applies to claims for both "bodily injury or property

damage." The *Byrd* Court stated that "total pollution exclusions" should be "limited to environmental damage or *injury caused by improper disposal or containment of hazardous wastes* [.]" *Byrd*, N.J.Super. 317 at 503–04 (emphasis added). That is precisely the scenario present in this case. Consequently, it is clear that the "total pollution exclusion" contained in the commercial general liability policy issued to Frey excludes coverage for the claim for personal injuries brought by plaintiff in this case.

In his response, plaintiff does not discuss the "total pollution exclusion," nor point to any cases that discuss its application. In fact, the only argument presented by plaintiff is based on the "products-completed operation hazard" provision that defines coverage for "bodily injury" or "property damage" resulting from "your product" or "your work." Plaintiff simply ignores the fact that the "total pollution exclusion" excludes coverage for certain pollution-related claims, whether or not they are the result of completed operations or products.

Consequently, there is no coverage available to Frey under the terms of the insurance contract. Therefore, plaintiff's claims against Investors Insurance pursuant to R.I.Gen. Laws § 27–7–2.4 must fail since that cause of action is predicated on there being coverage under Frey's insurance policy. Since there is no genuine dispute as to any material fact, Investors Insurance is entitled to summary judgment on plaintiff's claims and Van Waters' cross-claim.

## C. Van Waters' Motion for Summary Judgment

In his Second Amended Complaint, plaintiff bases his claims against Van Waters on two theories. First, that Van Waters is vicariously liable for the negligent acts of its agent Frey. Alternatively, in the absence of an agency relationship, plaintiff contends that both the packaging and transportation of chemicals is an ultra-hazardous activity, such that Van Waters becomes liable for the negligence of its independent contractors. In its motion for summary judgment, Van Waters argues that Frey was not its agent and that the packaging and transportation of chemicals are not ultra-hazardous activities. Plaintiff takes issue with both of these arguments in his objection to Van Waters' summary judgment motion.

■ It is well settled that under the doctrine of respondeat superior a principal or master becomes liable for the negligent acts of his or her agent or servant. *See Giroux v. Murphy*, 88 R.I. 280, 147 A.2d 465, 466 (1959); *Conant v. Giddings*, 65 R.I. 79, 13 A.2d 517, 518 (1940); 3 Am. Jur.2d Agency § 280 (1986); ("The well-settled general rule is that a principal is liable civilly for the tortious acts of his agent which are done within the course and scope of the agent's employment"); *see also* Restatement (Second) Agency § 214, comment a (1958). Conversely, it is also well settled that an employer is not liable for the negligent acts of an independent contractor. *See East Coast Collision & Restoration v. Allyn*, 742 A.2d 273, 275–76 (R.I.1999); *Focus Investment Associates, Inc. v. American Title Ins. Co.*, 797 F.Supp. 109, 112 (D.R.I.1992)(applying Rhode Island law), *aff'd in part, vacated in part*, 992 F.2d 1231 (1st Cir.1993); *Ballet Fabrics, Inc. v. Four Dee Realty Co.*, 112 R.I. 612, 314 A.2d 1, 6 (1974). It is not controverted that Frey, while packaging the chemicals at issue, was acting within the scope of its employment by Van Waters. It is controverted, however, that an agency relationship existed between Van Waters and Frey. Therefore, in order for Van Waters to be held liable for the alleged negligent acts of Frey, plaintiff must show that there was an agency relationship.

■ Agency is " 'the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on behalf and subject to his control, and consent by the other so to act.' " *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 867 (R.I.1987)(quoting Re-

statement (Second) Agency § 1(1)(1958)). Rhode Island courts have held that there are three elements to an agency relationship: (1) the principal must manifest that the agent will act for him, (2) the agent must accept the undertaking, and (3) the parties must agree that the principal will be in control of the undertaking. *See id.; Rosati v. Kuzman,* 660 A.2d 263, 265 (R.I. 1995); *Silvestri v. Pawtucket Memorial Hospital,* 1991 WL 789928 at *2 (R.I.Super.). "It is essential to the relationship that the principal have the right to control the work of the agent, and that the agent act primarily for the benefit of the principal." *Lawrence,* 523 A.2d at 867 (citing *Narragansett Wire Co. v. Norberg,* 118 R.I. 596, 376 A.2d 1, 5 (1977)).

▮ In contrast, an independent contractor relationship exists where one is retained to perform a task independent of and not subject to the control of the employer. *See Webbier v. Thoroughbred Racing Protective Bureau, Inc.,* 105 R.I. 605, 254 A.2d 285, 289 (1969); *McAlice v. Safeco Life Ins. Co.,* 1997 WL 839882 at *2 (R.I.Super.), *aff'd,* 741 A.2d 264 (R.I.1999)(citing 41 Am.Jur.2d Independent Contractors § 1 (1969)). Therefore, the key element of an agency relationship is the right of the principal to control the work of the agent. *See Lauro v. Knowles,* 739 A.2d 1183, 1185 (R.I.1999); *Rosati,* 660 A.2d at 265. Thus, the critical issue in determining Van Waters' liability in this case is whether Van Waters had the right to control Frey's activities of packaging and sealing the chemicals.

▮ In support of the argument that Frey was an independent contractor, Van Waters points to the Packaging Agreement which in paragraph 21 clearly states that Frey "shall perform all services as an independent contractor." *See* Defendant's First Brief, Ex. C. In response, plaintiff points to Bills of Lading which state "Frey as Agent for Van Waters & Rogers" to support the existence of an agency relationship. *See* Plaintiff's First Brief, Ex.1 and 2. This alone is enough to create an issue of material fact as to whether an

agency relationship existed. The " 'existence and scope of an agency relationship is essentially a factual determination' " and, thus, a jury issue. *Calenda v. Allstate Ins. Co.,* 518 A.2d 624, 628 (R.I.1986)(quoting *Petrone v. Davis,* 118 R.I. 261, 373 A.2d 485, 487 (1977)); *American Underwriting Corp. v. Rhode Island Hosp. Trust Co.,* 111 R.I. 415, 303 A.2d 121, 124 (1973). Yet, those documents were not written in a vacuum and it should come as no surprise that the Packaging Agreement was drafted by Van Waters and the Bills of Lading were supplied by Frey. Clearly, the circumstances of the relationship between Van Waters and Frey must be examined in order to determine what the words in the Packaging Agreement and the Bills of Lading really mean.

The strongest evidence put forward by Van Waters that an agency relationship does not exist, is the testimony of John Parzych, Van Waters' regional regulatory manager. In his affidavit, Parzych stated that Van Waters "had no control or supervisory authority over Frey." *See* Van Waters' First Brief, Ex. B at para. 14. Thus, Van Waters contends that an agency relationship never arose since the third element of control is lacking. However, Tilghman Frey, the principal of Frey, testified in his deposition that Van Waters did exert a considerable amount of control over the packaging of the chemicals. *See* Plaintiff's Second Brief, pp. 7–8. He testified that Van Waters bought and supplied the packaging materials to be used by Frey in packaging the chemicals, and more importantly, that Van Waters instructed Frey on the packaging of the chemicals and the weight of the individual barrels through weekly communications. *See id.* and Ex. 2, pp. 27–30, 34–36. This clearly creates a dispute as to material facts. Whether there was an agency relationship is an issue for the trier of fact to resolve in this case.

Van Waters' incessantly argues that because the contract entered into between it and Frey identifies the latter as an inde-

pendent contractor, summary judgment should be granted. The Massachusetts case relied on heavily by Van Waters, *see Cheschi v. Boston Edison Co.*, 39 Mass. App.Ct. 133, 654 N.E.2d 48 (1995), *review denied*, 421 Mass. 1102, 655 N.E.2d 1277 (1995) does not support this argument. In *Cheschi*, plaintiff was employed by a construction company and was injured while working at a construction project at a nuclear power plant owned by Boston Edison. Plaintiff sued Boston Edison on a theory of imputed negligence under an agency theory. The trial judge, however, refused to give jury instructions on an agency theory. The Appeals Court affirmed the trial judge's decision because the contract governing the construction services stated the relationship as one of independent contractor, and, more importantly, there was "[u]ncontroverted trial testimony attested to [the construction company's] control over the manner in which it conducted its work." *Cheschi*, 654 N.E.2d at 50. Therefore, although the contract between the construction company and Boston Edison was relied upon by the trial judge in crafting his charge, the absence of any evidence indicating Boston Edison's control over the construction work was the reason why "[t]he judge correctly instructed the jury that [the construction company] was an independent contractor." *Id.* at 51.

Finally, this Court has found a case where a Rhode Island court denied summary judgment because there was a genuine dispute of material fact as to whether there was an agency relationship between a hospital and a physician, despite the existence of an employment contract identifying the physician as an independent contractor. *See Silvestri*, 1991 WL 789928 at *2. The court's denial of the summary judgment motion was based on evidence that the hospital had control over the emergency medical care despite the word-

ing of the contract. *Id.* As a result, the court found "that a genuine issue of material fact exists as to whether or not [the physician] is an agent of the hospital." *Id.* at *3.

In the case sub judice, there is a genuine dispute of material fact over whether Van Waters exerted control over Frey in the packaging of the chemicals at issue, or had the right to control Frey in the performance of these activities. Therefore, whether Frey was an agent of Van Water is a matter for the jury to decide. Although plaintiff has a tough row to hoe in proving the existence of an agency relationship, Van Waters' motion for summary judgment must be denied for the foregoing reasons. Since Van Waters' motion is denied on this basis, this Court need not discuss plaintiff's argument that the doctrine of apparent authority applies, nor his alternative argument that Van Waters is liable for the negligence of its independent contractor because the packaging and transportation of the chemicals is an ultra-hazardous activity.[4]

## D. CRST's Motion for Summary Judgment

In response to CRST's motion for summary judgment, both plaintiff and Van Waters aver that CRST can be made liable through its agent, D & S, for the negligent transportation of the chemicals. Alternatively, plaintiff argues that if this Court fails to find that an agency relationship existed, then CRST is still liable pursuant to Restatement (Second) of Torts § 427A (1965), since the transportation of chemicals is an ultra-hazardous activity and as such there is a non-delegable duty of due care. CRST objects to both arguments and asks this Court to grant summary judgment on all claims and cross-claims asserted against it.

---

4. This Court discusses the ultra-hazardous activity argument put forth by plaintiff in section III.D. Finally, plaintiff's third argument, that Van Waters was negligent in its supervision of Frey, need not be discussed for purposes of this motion as it was not pleaded in the Second Amended Complaint and was first raised in his Second Brief to the Court. *See* Plaintiff's Supplemental Brief, p. 16.

As stated in the previous section, for CRST to be held liable for the negligence of D & S as an agent three elements must be present: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an agreement between the parties that the principal will be in control of the undertaking. *See Lawrence*, 523 A.2d at 867. Again, control is the linchpin of an agency relationship. *See Rosati*, 660 A.2d at 265. If control by the alleged principal is lacking, then it is an independent contractor relationship, and negligence is not imputed to the employer. *See Conant*, 13 A.2d at 517; *McAlice*, 1997 WL 839882 at *2. The issue then is whether a freight broker can be held vicariously liable for the torts committed by transportation companies employed by the freight broker for third parties.

An old Rhode Island case provides some guidance on this issue. In *Lake v. Bennett*, 41 R.I. 154, 103 A. 145 (1918), the Rhode Island Supreme Court held that one who contracted for the transportation of a boiler was an independent contractor where no control was exercised with regard to the route or manner used to transport the boiler. *See also Tartaglione v. Shaw's Exp., Inc.*, 790 F.Supp. 438, 441 (S.D.N.Y.1992)(holding that freight broker was not liable for the accident caused by the truck it contracted with to transport goods because the broker had no control over the manner in which the goods were transported); *King v. Young*, 107 So.2d 751, 753 (Fla.Dist.Ct.App.1958)(same). This rule applies in this case, so plaintiff must show that CRST had control over the route and manner used for the transportation of the chemicals. In support of its motion, CRST points to the contract between it and D & S and the fact that CRST exercised no control over the transportation of the chemicals from New Jersey to Massachusetts. In an affidavit, an agent of CRST, John Mead, asserted that CRST had no involvement in choosing the routes, the means, or the people that were used in transporting the chemicals at issue. *See* CRST's First Brief, Ex. B at p. 2.

■ Neither plaintiff nor Van Waters points to any evidence indicating that an agency relationship existed between CRST and D & S. *See* Plaintiff's Brief, p. 4 and Van Waters Brief, p. 6. There is simply no evidence before this Court indicating that CRST in any way controlled D & S in choosing the route or manner and means used for the transportation of the chemicals. In its brief, Van Waters points to the contract between CRST and D & S and argues that CRST had control of the transportation. *See* Van Waters' Brief, p. 6. The contract provision to which Van Waters cites, indicates that it is D & S, not CRST, who maintains control over the arrangement, loading and unloading of the materials. *See* Contract at ¶ 10. While not dispositive of the issue of agency, the contract also states that D & S is to operate as an independent contractor. *See* Contract at ¶ 13. More importantly, Van Waters fails to provide any evidence indicating that CRST actually exercised control over D & S in the transportation of these chemicals. A bald assertion that an agency relationship existed without any evidence to support it does not create a genuine dispute of material fact. In short, plaintiff and Van Waters have failed to create a material factual dispute with respect to whether an agency relationship existed between CRST and D & S.

■ In a final gasp for air, plaintiff argues that even if no agency relationship existed CRST is still responsible for D & S because the transportation of chemicals is an ultra-hazardous activity. *See* Restatement (Second) of Torts § 427A (1965). This argument is without merit. As comment b to § 427A makes clear, the principle underlying the rule is that one who sets into motion an abnormally dangerous activity cannot delegate the responsibility for harm resulting from that activity to others. The transportation of the chemicals here was not by itself an ultra-hazardous activity. Plaintiff confus-

es the dangerous nature of the chemicals with the activity of transporting the chemicals. Strict liability under § 427A attaches only to ultra-hazardous activities and not to ultra-hazardous materials. *See Splendorio v. Bilray Demolition Co., Inc.,* 682 A.2d 461, 465–66 (R.I.1996). The Rhode Island Supreme Court has set forth six factors to be considered in determining whether an activity is ultra-hazardous: (1)existence of a high degree of risk of some harm to the person, land or chattels of others; (2) likelihood that the harm that results will be great; (3) inability to eliminate the risk by the exercise of reasonable care; (4) extent to which the activity is not a matter of common usage; (5) inappropriateness of the activity to the place where it is carried on; and (6) extent to which its value to the community is outweighed by its dangerous attributes. *Splendorio,* 682 A.2d at 466 (adopting the factors for determining ultra-hazardous activities as set forth in Restatement (Second) of Torts § 520 (1977)). These factors are not essential elements and "are to be viewed as a whole and the weight apportioned to each should be dependent upon the facts in each particular case." *Id.*

When making a determination as to whether an activity is abnormally dangerous, this Court must look at the activity of transportation of the materials rather than the materials themselves. *Id.* In fact, when analyzing the factors set forth in § 520 of the Restatement of Torts, with respect to the transportation of dangerous chemicals, courts have focused on whether the risk involved could be reduced through the exercise of reasonable care. *See, e.g., Indiana Harbor Belt Railroad Co. v. American Cyanamid Co.,* 916 F.2d 1174, 1180–81 (7th Cir.1990)(holding that because the dangers of shipping acrylonitrile could be avoided by using reasonable care, the shipping of toxic chemicals is not an ultra-hazardous activity); *E.S. Robbins Corp. v. Eastman Chemical Co.,* 912 F.Supp. 1476, 1489 (N.D.Ala.1995)(the

transportation of dangerous chemicals "is not abnormally dangerous, such that the imposition of strict liability is warranted, unless it is an activity which cannot be performed safely even in the absence of negligence and in the exercise of all reasonable care"); *Amcast Indus. Corp. v. Detrex Corp.,* 779 F.Supp. 1519, 1544 (N.D.Ind.1991), *aff'd in part, rev'd in part,* 2 F.3d 746 (7th Cir.1993)(holding that transportation and delivery of hazardous substance is not abnormally dangerous activity).

In this case, it is clear that Rhode Island law does not regard the transportation of dangerous chemicals to be an ultra-hazardous activity, such that strict liability is imposed under § 427A of the Restatement of Torts. The transportation of hazardous chemicals along the inter-state highway system is common with companies such as D & S and that function is performed daily across this country. Transporting chemicals cannot be considered an ultra-hazardous activity because it can be, and has been, performed safely when the parties involved exercise reasonable care.[5]

For the foregoing reasons, both plaintiff and Van Waters have failed to present evidence which creates a genuine dispute of material facts. Neither party presented any evidence indicating that CRST controlled, or had the right to control, D & S in the transportation of the chemicals at issue. Consequently, CRST's motion for summary judgment is granted on plaintiff's complaint and Van Waters' cross-claims.

### E. D & S' Motion for Summary Judgment

Plaintiff alleges that defendant D & S is liable because it was negligent in the transportation of the chemicals or in the alternative it is responsible for the negligence of its agent C & E. D & S argues that it is entitled to summary judgment because plaintiff has failed to demon-

---

**5.** Since the packaging of dangerous chemicals is also routinely done safely when reasonable care is exercised, it too cannot be considered an ultra-hazardous activity.

strate that his injuries resulted from the negligence of D & S. D & S further argues that it is evident that the chemical leakage was caused by the improper packaging and loading of the barrels onto the D & S trailer, which was all done by Frey. *See* Photographs and Affidavit of John Paryzch. Alternatively, D & S avers that it had no agency relationship with C & E. In response, plaintiff argues that in the absence of evidence indicating that the driver for D & S inspected the load, plaintiff's injuries stem from the improper packaging, loading and transportation of the chemicals. For the reasons outlined below, this Court concludes that it cannot grant summary judgment to D & S because there are factual issues regarding the cause of the chemical leakage that cannot be resolved at this stage of the litigation.

It is not disputed that D & S transported the chemicals only a short distance, from Frey's warehouse in Newark, New Jersey to Greenbrook, New Jersey. It is also not disputed that employees of Frey loaded the chemicals onto the D & S trailer. However, commercial transporters are under a federal statutory duty to inspect the load within the first twenty five miles after beginning the trip in order to make adjustments with regard to the cargo or load securing devices if necessary. *See* 49 C.F.R. § 392.9(b)(2)(1999). The requirements regarding the transportation of hazardous materials are even more rigorous. *See* 49 C.F.R. §§ 177–178 (1999). Whether D & S inspected the load during its brief transportation of the chemicals is disputed in the affidavits presented by the parties. Therefore, there are credibility issues which must be determined at trial. It is not the function of the court at the summary judgment stage to determine credibility. *See Gannon,* 777 F.Supp. at 169. In short, if the evidence presented "is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper." 10A Charles A Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure, § 2725, at 437 (1998).

Plaintiff also relies on the doctrine of res ipsa loquitur to prove that D & S was negligent in the packaging and/or transportation of the chemicals. Res ipsa loquitur is not a rule of either procedural or substantive tort law but is rather a form of circumstantial evidence. *See Konicki v. Lawrence,* 475 A.2d 208, 210 (1984). Where applicable, the doctrine "establishes inferential evidence of a defendant's negligence, thus making out a prima facie case for a plaintiff, and casts upon a defendant the burden of rebutting the same to the satisfaction of the jury.. [T]he burden of proof remains on the plaintiff, but the defendant has the burden of going forward with the evidence." *Marshall v. Tomaselli,* 118 R.I. 190, 372 A.2d 1280, 1284 n. 3 (1977). In *Parrillo v. Giroux Co.,* 426 A.2d 1313, 1320 (R.I.1981), the Rhode Island Supreme Court adopted the approach taken by the Restatement (Second) of Torts § 328(D), at 156 (1965) for determining when this circumstantial-proof-of-negligence doctrine may be used. This approach disavows an earlier requirement of exclusive control. Under the former rule, a plaintiff had to demonstrate that the defendant at the time of the accident exclusively controlled the instrumentality of the plaintiff's injury. *Parrillo,* 426 A.2d at 1320; *see also Marshall,* 372 A.2d at 1284 (stating former Rhode Island rule). After *Parrillo* "[a]ll that is required is that the plaintiff produce sufficient evidence from which a reasonable [person] could say that, on the whole, it was more likely than not that there was negligence on the part of the defendant." *Id.* at 1319.

In this case, plaintiff points to the following evidence in opposition to D & S' motion for summary judgment: Mr. Iwanecheko, a sales manager for D & S, testified that the driver for D & S should have inspected the load prior to leaving the Frey warehouse; when the load was brought to the D & S warehouse in Greenbrook, New Jersey, the load was consolidated with other materials by D & S; that if the load required shrink-wrapping to be transported, it would have been performed

at the D & S location in Greenbrook; and that if the load appeared unsafe through inspection, then drivers at D & S would not have taken the freight. *See* Plaintiff's Brief, pp. 4–5 and Depo. of Mr. Iwanecheko, pp. 30–34. Therefore, plaintiff has successfully pointed to some evidence from which one can reasonably infer that D & S had control over the chemicals for a period of time, and that its alleged failure to either inspect or re-package the barrels may have contributed to or caused the chemical leakage that injured plaintiff.

▉ In the case sub judice, since there is more than one plausible cause for the chemical leakage, the theory of res ipsa loquitur is applicable because it cannot be determined which cause directly resulted in the injury. Although a court cannot presume negligence from the mere happening of an accident, *see Konicki*, 475 A.2d at 210, the record demonstrates that inferences of negligence may be drawn although D & S contends that there is no evidence linking the actions of D & S to plaintiff's injuries. *See* D & S' Brief, p. 2. Plaintiff does not have to prove D & S' negligence beyond a reasonable doubt, nor does he have to rule out all other possible causes of the chemical leakage. *See Parrillo*, 426 A.2d at 1319; *Madancy v. Providence Gas Co. and Mine Safety Appliances Co.*, 1995 WL 941414 at *2 (R.I.Super.)(denying defendant's motion for summary judgment because under the doctrine of res ipsa loquitur, defendant's possible negligence was one of several causes for plaintiff's injury). Rather, plaintiff needs only to point to sufficient evidence from which a reasonable person could conclude that it was more likely than not that there was negligence on the part of D & S or its agent C & E.[6] *Id.* Plaintiff has succeeded in carrying this burden and has demonstrated that with respect to the connection between D & S' negligence and plaintiff's injuries, there are material factual issues which must be resolved at trial. For the foregoing reasons, D & S' motion for summary judg-

ment on plaintiff's Complaint and Van Waters' cross-claim is denied. Finally, since CRST is entitled to judgment on plaintiff's Complaint, CRST's cross-claim against D & S for indemnification is extinguished, at least, in this case. Therefore, that cross-claim is dismissed

## CONCLUSION

For the foregoing reasons, this Court grants the motions of Investors Insurance and CRST for summary judgment and the summary judgment motions of Van Waters and D & S are denied. CRST's cross-claim against D & S is dismissed. What remains in this case is as follows: (1) plaintiff's claims against Van Waters, D & S and Frey; (2) Van Waters' cross-claims against D & S and Frey. The cross-claims are hereby severed for trial. The trial will proceed on plaintiff's claims against Van Waters and D & S. Frey will be a defendant at trial if the bankruptcy stay is lifted. No judgments shall enter until all claims are resolved.

It is so ordered.

---

6. Whether C & E is an agent of D & S is an issue of fact to be decided by the trier of fact.